
## AFFIDAVIT

I, Patrick B. Lentz, with the Cleveland Division of the Federal Bureau of Investigation, hereinafter referred to as the FBI, duly sworn do state the following:

## INTRODUCTION

1. Affiant is seeking a criminal complaint against Xavier Anthony Louis HEMPSTEAD for violation of Title 21, United States Code, Section 841(a)(1) and 846.

2. As a Special Agent of the FBI, your Affiant is an investigative law enforcement officer of the United States of America within the meaning of Title 18 U.S.C. § 2510(7). Your Affiant is empowered to conduct investigations and to make arrests for federal felony offenses.

3. Your Affiant has been employed by the Federal Bureau of Investigation for over 11 years and has been assigned to the Cleveland Division of the FBI for the last 3 years. During that time, your Affiant has been assigned to investigate activities of drug trafficking organizations, drug-related gang and violent crime activities, and other criminal offenses. As a Special Agent of the FBI, your Affiant has participated in narcotics/drug enforcement and the dismantlement of mid to upper-level drug trafficking organizations. Your Affiant has planned and executed long-term investigative operations that have led to the disruption and dismantlement of criminal street gangs whose revenues centered primarily on the trafficking and distribution of illicit drugs. Your Affiant has been the case Agent for Federal investigation(s) into a violent street gang involved in illegal drug and firearms sales, racketeering and murder.

4. As a Special Agent in the FBI, your Affiant received basic drug training at the FBI Academy in Quantico, Virginia. Your Affiant has received field training and accrued practical experience in advanced drug-related investigative techniques that include, but are not

limited to, surveillance, undercover operations, interview and interrogation techniques, informant recruitment and control, search warrant and case preparation, and interception and analysis of recorded conversations. Your Affiant has been involved in controlled undercover purchases of drug evidence and subsequent arrests of defendants charged with drug-related crimes. Your Affiant has supervised the activities of informants who have provided information concerning controlled substances and organized criminal activities, purchased controlled substances, and supervised consensual monitoring in connection with these investigations. Your Affiant has been involved in drug-related investigations that led to arrests, drafting and executing search warrants, coordinating undercover purchases of controlled substances and the activities of informants who have provided information concerning the activities of drug traffickers.

## FACTS AND CIRCUMSTANCES

5. A confidential source (hereinafter referred to as Source 1) provided information to investigators that XAVIER HEMPSTEAD, also known as "LOU," was selling crack cocaine in the Cleveland, Ohio area. Source 1 contacted HEMPSTEAD at telephone number (216) 704-8138 and later (216) 386-8300 to order drugs. The telephone calls were made prior to Source 1 traveling to 12514 Emery Avenue, Cleveland, OH, to provide HEMPSTEAD with U.S. currency in exchange for crack cocaine.

6. On February 20, 2018, at approximately 7:00 p.m., Source 1 successfully contacted a male recognized as "LOU" at telephone number (216) 704-8138. "LOU" answered the phone and Source 1 requested $60 worth of crack cocaine. "LOU" instructed Source 1 to come to 12514 Emery Avenue. Source 1 and Source 1's vehicle were searched by investigators and no contraband was found. Investigators provided Source 1 with $60 U.S. currency for the drug transaction. At

approximately 7:10 p.m., Source 1 parked and approached the 12514 Emery Avenue and knocked on the front door. Investigator(s) watched the front door open and a man who appeared to be HEMPSTEAD made contact with Source 1. HEMPSTEAD took the money from Source 1 and instructed Source 1 to wait in the car. At approximately, 7:14 p.m., investigators observed a young, light-skin black/male, leave 12514 Emery Avenue and walk to Source 1's automobile to consummate the crack cocaine transaction. The light-skin black/male provided Source 1 with a small plastic bag containing approximately 0.53 grams of suspected crack cocaine (later confirmed as crack cocaine through laboratory testing). Investigators maintained constant visual surveillance of Source 1 as he/she left 12514 Emery Avenue, and followed Source 1 to a designated meeting location. Subsequently, investigators provided a photograph of XAVIER HEMPSTEAD to Source 1, who positively identified this individual in the photograph as the man he/she knows as "LOU." A search of records with the Cleveland Police Department and information from previous local search warrants revealed XAVIER HEMPSTEAD is a resident of 12514 Emery Avenue, Cleveland, Ohio.

7. On March 1, 2018, at approximately 7:15 p.m., Source 1 placed a (recorded) outgoing call to "LOU," at telephone number (216) 704-8138. "LOU" answered the call.

    Source 1: "Can I roll through for 100?" ($100 worth of crack cocaine)
    LOU: "You said what?"
    Source 1: "Can I come through for 100?"
    LOU: "Hurry up."
    Source 1: "Ok"

Source 1 and Source 1's vehicle were searched by investigators and no contraband was found. Investigators provided Source 1 with $100 U.S. currency for the drug transaction and he/she was

outfitted with a body recorder for monitoring/recording. Investigators maintained constant visual surveillance of Source 1. At approximately 7:29 p.m., Source 1 parked and approached 12514 Emery Avenue and met with "LOU." Source 1 provides "LOU" with $100 U.S. currency.

>   LOU: "Hurry up (Source 1). Wait in the car though. Wait in the car and I'll come out."

At approximately 7:33 p.m., an unidentified, black, male (UM), approaches Source 1's vehicle.

>   Source 1: "Come on dude, where's LOU? Where LOU at man?"
>   UM: "Calm down. I said calm down (deep voice)."
>   Source 1: "That's 100?" (worth of crack)
>   UM: "You gave it (cash) to him (LOU) already?"
>   Source 1: "Ya. That's 100 dude?"
>   UM: "I don't know. That's what he (LOU) gave me to give to you."
>   Source 1: "Alright dude, he (LOU) said he was gonna hook me up, man."

UM consummates the transaction by providing Source 1 with approximately 0.56 grams of suspected crack cocaine (later confirmed as crack cocaine through laboratory testing). Investigators maintained constant visual surveillance of Source 1 as he/she left 12514 Emery Avenue, and followed Source 1 to a designated meeting location. Source 1 handed investigators the suspected crack-cocaine to be placed into evidence. Source 1, along with Source 1's vehicle, was searched and no contraband was found.

8. On March 7, 2018, at approximately 8:40 p.m., Source 1 placed a (recorded) outgoing call to "LOU," at telephone number (216) 704-8138. "LOU" answered the call.

>   Source 1: "Can I come see you?"
>   LOU: "What you trying to do?"

Source 1: "1-4. ($140 worth of crack cocaine). 'Cause I can't come back out no more this week."

LOU: "Alright, alright, just hurry up and come to the house."

Source 1: "Ok. But, I'm not sitting outside."

LOU: "All you gotta do is come in the god damn door, man, hurry up."

Source 1: "Ok, stop swearing at me Dude."

Source 1 and Source 1's vehicle were searched by investigators and no contraband was found. Investigators provided Source 1 with $140 U.S. currency for the drug transaction and he/she was outfitted with a body recorder for monitoring/recording. Investigators maintained constant visual surveillance of Source 1. At approximately 8:53 p.m., Source 1 parked and approached 12514 Emery Avenue and entered the residence. Source 1 provides "Lou" with $140 U.S. currency and "Lou" consummates the transaction by providing Source 1 with approximately 1.06 grams of suspected crack cocaine (later confirmed as crack cocaine through laboratory testing). Investigators maintained constant visual surveillance of Source 1 as he/she left 12514 Emery Avenue at 8:57 p.m., and followed Source 1 to a designated meeting location. Upon arriving at that location, Source 1 provided investigators with the suspected crack cocaine to be placed into evidence. Source 1, along with Source 1's vehicle, was searched and no contraband was found.

9. On March 14, 2018, at approximately 7:13 p.m., Source 1 placed a (recorded) outgoing call to "LOU," at telephone number (216) 704-8138. "LOU" answered the call.

Source 1: "What's up?"

LOU: "What's good baby. I ain't heard from you. Where you been at? You alright?"

Source 1: "Ya, I'm cool. I've been at work, school and everything."

LOU: "Ok. Ok. That's tight. That's tight. I'm proud of you. Where you at? What you trying to do?"

5

Source 1: "I'm trying to do a 100." ($100 worth of crack cocaine)

LOU: "I got you. I'm gonna load you up like last time. I got you. Pull up at the house. Come straight in the …, I'm gonna have the door unlocked. Come straight in the house."

Source 1: "Ok."

Source 1 and Source 1's vehicle were searched by investigators and no contraband was found. Investigators provided Source 1 with $100 U.S. currency for the drug transaction and he/she was outfitted with a body recorder for monitoring/recording. Investigators maintained constant visual surveillance of Source 1. At approximately 7:30 p.m., Source 1 parked and approached 12514 Emery Avenue and entered the residence. Source 1 provides "LOU" with $100 U.S. currency and "LOU" consummates the transaction by providing Source 1 with approximately 0.67 grams of suspected crack cocaine (later confirmed as crack cocaine through laboratory testing). Investigators maintained constant visual surveillance of Source 1 as he/she left 12514 Emery Avenue, at 7:32 p.m., and followed Source 1 to a designated meeting location. Upon arriving at that location, Source 1 provided investigators with the suspected crack cocaine to be placed into evidence. Source 1, along with Source 1's vehicle, was searched and no contraband was found.

10. On March 21, 2018, at approximately 7:12 p.m., Source 1 placed (recorded) outgoing calls to "LOU," at telephone number (216) 704-8138. The call(s) were unanswered and went to voicemail. "LOU" calls Source 1 immediately back.

Source 1: "Hello?"

LOU: "Ya"

Source 1: "What's up are you around?"

LOU: "Where you at?"

Source 1: "I'll be 10 minutes away before getting off the freeway"

LOU: "What I'm asking you is, what highway you getting off? 480?"

Source 1: "No, 130th."

LOU: "Oh, so you getting off 71? Alright, um…, what you trying to do?"

Source 1: "100." ($100 worth of crack cocaine)

LOU: "I got you. Just come to the house. Meet me at the house."

Source 1: "Alright."

LOU: "Alright."

Source 1 and Source 1's vehicle were searched by investigators and no contraband was found. Investigators provided Source 1 with $100 U.S. currency for the drug transaction and he/she was outfitted with a body recorder for monitoring/recording. Investigators maintained constant visual surveillance of Source 1. At approximately 7:20 p.m., Source 1 parked on the street at 12514 Emery Avenue. Investigators then observe "LOU" arrive at 12514 Emery Avenue as the passenger in an older model Buick. "LOU" exits the vehicle and enters 12514 Emery Avenue. A short time later, "LOU" exits the house and gets back in the Buick and the Buick drives away. Source 1 receives a call from "LOU" to follow him (and meet him one street north on Hirst Avenue). Approximately 7:35 p.m., Source 1 travels to 12509 Hirst Avenue, Cleveland, Ohio, and "LOU" walks up to the vehicle to provide Source 1 with approximately 0.48 grams of suspected crack cocaine (later confirmed as crack cocaine through laboratory testing). "LOU" ripped off the knot on the plastic bag of crack cocaine before taking the $100 U.S. currency from Source 1 to consummate the drug deal. Investigators maintained constant visual surveillance of Source 1 as he/she left 12509 Hirst Avenue, and followed Source 1 to a designated meeting location. Upon arriving at that location, Source 1 provided investigators with the suspected crack cocaine to be placed into evidence. Source 1, along with Source 1's vehicle, was searched and no contraband was found. (Investigators have previously observed "LOU's" black Dodge

Ram pickup truck bearing Ohio license plate # HCA3648 parked in the driveway of 12509 Hirst Avenue. Source 1 believes "LOU" is connected to Location 2 and believes it to be his "stash house" for drugs.)

11.     On March 29, 2018, at approximately 6:51 p.m., Source 1 placed a (recorded) outgoing call to "LOU," at telephone number (216) 704-8138. "LOU" answered the call.

> Source 1: "What's up? You around?"
>
> LOU: "What?"
>
> Source 1: "Are you around?"
>
> LOU: "I'm at the house. What you trying to do?"
>
> Source 1: "100." ($100 worth of crack of cocaine)
>
> LOU: "Hurry up to the house. How long you gonna be?"
>
> Source 1: "Uhm, uhm, I'm on the freeway and I will be at your house about..not even 10 minutes. So make it fat!"
>
> LOU: "Alright, alright, alright. I got you. I was about to get in the shower, but I'll wait."
>
> Source 1: "Ok. Sounds great."
>
> LOU: "Alright."

Source 1 and Source 1's vehicle were searched by investigators and no contraband was found. Investigators provided Source 1 with $100 U.S. currency for the drug transaction and he/she was outfitted with a body recorder for monitoring/recording. Investigators maintained constant visual surveillance of Source 1. At approximately 7:04 p.m., Source 1 parked and approached the 12514 Emery Avenue and entered the residence. Source 1 provides "LOU" with $100 U.S. currency and "Lou" consummates the transaction by providing Source 1 with approximately 0.76 grams of suspected crack cocaine (later confirmed as crack cocaine through laboratory testing) which he retrieved from his bedroom. At approximately 7:08 p.m., Source 1 exits 12514 Emery

Avenue, as investigators maintained constant visual surveillance to a designated meeting location. Upon arriving at that location, Source 1 provided investigators with the suspected crack cocaine to be placed into evidence. Source 1, along with Source 1's vehicle, was searched and no contraband was found.

12. On April 10, 2018, at approximately 7:03 p.m., Source 1 placed a (recorded) outgoing call to "LOU," at telephone number (216) 704-8138. "LOU" answered the call.

> Source 1: "What's up shaker? You around?"
> LOU: "Hello?"
> Source 1: "You around?"
> LOU: "Ya, what you trying to do?"
> Source 1: "120, if you can make it right?" ($120 worth of crack cocaine)
> LOU: "You know I will. Make your way to the house. Hurry up."
> Source 1: "Ok. Bye."

Source 1 and Source 1's vehicle were searched by investigators and no contraband was found. Investigators provided Source 1 with $120 U.S. currency for the drug transaction and he/she was outfitted with a body recorder for monitoring/recording. Investigators maintained constant visual surveillance of Source 1. At approximately 7:10 p.m., Source 1 parked and approached 12514 Emery Avenue and entered the residence. Source 1 provides "Lou" with $120 U.S. currency and "Lou" consummates the transaction by providing Source 1 with approximately 1.38 grams of suspected crack cocaine (later confirmed as crack cocaine through laboratory testing). Investigators maintained constant visual surveillance of Source 1 as he/she left 12514 Emery Avenue, at approximately 7:11 p.m., and followed Source 1 to a designated meeting location. Upon arriving at that location, Source 1 provided investigators with the suspected crack cocaine

to be placed into evidence. Source 1, along with Source 1's vehicle, was searched and no contraband was found.

13. On April 18, 2018, at approximately 7:02 p.m., Source 1 placed approximately 9 (recorded) outgoing calls to "LOU," at telephone number (216) 704-8138, which were unanswered. Source 1 and Source 1's vehicle were searched by investigators and no contraband was found. Investigators provided Source 1 with $100 U.S. currency for the drug transaction and he/she was outfitted with a body recorder for monitoring/recording. Investigators maintained constant visual surveillance of Source 1. At approximately 7:21 p.m., without positive contact with "LOU," Source 1 parked and approached 12514 Emery Avenue. "LOU" answers the door and Source 1 entered the residence.

> LOU: "How much you got?"
> Source 1: "100." ($100 to buy crack cocaine)
> LOU: "Why ain't you call though?"
> Source 1: "I did call baby, I'll show you on my phone."
> LOU: "Did you see the new text I sent you?"
> Source 1: "No."

(A short discussion occurs about "LOU's" new phone number. "LOU" wants Source 1 to contact him only at his new number 216-386-8300. "LOU" then calls Source 1's cellular telephone so Source 1 can lock in the number).

> LOU: "Here, I'm gonna give you all this (suspected crack cocaine). Here, it's fat too. I got you.
> Source 1: "Thank you."

10

Source 1 provided "Lou" with $100 U.S. currency and "Lou" consummated the transaction by providing Source 1 with approximately 0.65 grams of suspected crack cocaine (later confirmed as crack cocaine through laboratory testing) which he retrieved from a bedroom at 12514 Emery Avenue. Investigators maintained constant visual surveillance of Source 1 as he/she left 12514 Emery Avenue, and followed Source 1 to a designated meeting location. Upon arriving at that location, Source 1 provided investigators with the suspected crack cocaine to be placed into evidence. Source 1, along with Source 1's vehicle, was searched and no contraband was found.

14. On May 1, 2018, at approximately 4:58 p.m., Source 1 placed a (recorded) outgoing call to "LOU," at telephone number (216) 386-8300. "LOU" answered the call.

> LOU: "Ya (Source 1)."
>
> Source 1: "What's up sweetie, you around?"
>
> LOU: "What's up with you?"
>
> Source 1: "Huh? Ya.. I wanted to see if I could stop by?"
>
> LOU: "Ya, what you trying to do?"
>
> Source 1: "120." ($120 worth of crack cocaine)
>
> LOU: "I got you, where you at now?"
>
> Source 1: "I'm on hundred, getting off on a, uhm, uhm, by 150th. I'm passing 150th right now."
>
> LOU: "Alright, ya, get off, get off the highway. Uhm, just pull off, just pull on Emery. Hurry up."
>
> Source 1: "Ok. Alright. Bye."

"LOU" instructs Source 1 to come to 12514 Emery Avenue. Source 1 and Source 1's vehicle were searched by investigators and no contraband was found. Investigators provided Source 1 with $120 U.S. currency for the drug transaction and he/she was then outfitted with a body recorder for monitoring/recording. Investigators maintained visual surveillance of Source 1.

Approximately, 5:15 p.m., Source 1 approaches 12514 Emery and waits while an unknown, older, black, female hugs "LOU" on the front porch. The unknown woman leaves and "LOU" addresses Source 1:

> LOU: "I'm about to hop in with you after." (LOU briefly goes in 12514 Emery Avenue and comes back out)
>
> Source 1: "Where you going all jazzied up?"
>
> LOU: "Come on follow me right quick. I'm gonna jump in this Cadillac, follow me."

"LOU" gets in the driver seat of a Cadillac sedan and drives to 12509 Hirst Avenue and pulls in the driveway. Approximately, 5:19 p.m., "LOU" was seen at the front door of 12509 Hirst Avenue and appeared to be unlocking the interior door while holding the white security door open. "LOU" was in the residence for several minutes before exiting the home and entering the vehicle of Source 1. "LOU" held the suspected crack cocaine (wrapped in blue latex rubber) in his left hand before providing it Source 1.

> LOU: "What's up with you (Source 1)?"
>
> Source 1: "I'm not worried about what it cost me. Ya. Shit, I'm trying to get, I'm trying to get an eight ball." (~3.5 grams of crack cocaine)
>
> LOU: "Why didn't you tell me?"
>
> Source 1: "Shit, I wanted to know how much they were. I knew I got, I got 120 on me, but I didn't know what an eight ball cost. I can come probably Friday to see what I need for an eight ball."
>
> LOU: "Call me, call me on Friday. I got you."
>
> Source 1: "I mean…"
>
> LOU: "I'll take care of you. I got you."
>
> Source 1: "I mean, so, of course I'm not, what I'm saying is, what it cost me for an eight ball?"
>
> LOU: "Man…"
>
> Source 1: "Let me see how much I got there." (referring to cash given to LOU for crack)

12

LOU: "Oh, I didn't even count it."

Source 1: "I got 20, 40, 60, 80, 100, 110, 120." (counts the $120 U.S. currency given to LOU)

LOU: "It's all there."

Source 1: "So.."

LOU: "Listen, on Friday, when you call me. I'm have it already ready for you. Call me Friday. Man, I'll give you an eight ball, (Source 1), man, gimme, gimme, gimme 190."

Source 1: "190 for an eight ball?"

LOU: "Yep. Gimme 190."

Source 1: "What does it weigh? 3.25 (grams), right?"

LOU: "Ya."

Source 1: "That's eight ball."

LOU: "Ya."

Source 1: "Alright, hook me up. Man I'm serious."

LOU: "I got you. You heard what I said."

Source 1: "Ok."

At approximately 5:23 p.m., Source 1 departed 12509 Hirst, after "LOU" consummated the transaction by providing Source 1 with suspected crack cocaine (laboratory testing results pending). Investigators maintained visual surveillance of Source 1 as he/she left 12509 Hirst Avenue, and followed Source 1 to a designated meeting location. Upon arriving at that location, Source 1 provided investigators with the suspected crack cocaine to be placed into evidence. Source 1, along with Source 1's vehicle, was searched and no contraband was found.

## CONCLUSION

15. Based on the foregoing facts and circumstances, your Affiant states that probable cause exists that Xavier Anthony Louis HEMPSTEAD was in violation of Title 21, United States Code, Section 841(a)(1).

_____
Patrick B. Lentz
Special Agent
Federal Bureau of Investigation

Sworn to via telephone after submission by reliable electronic means. Crim.Rules. 4.1; 41(d)(3)



Thomas M. Parker
United States Magistrate Judge
**2:42 PM, May 3, 2018**